UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Petco Animal Supplies Stores, Inc.,            Civil No. 10-682 (SRN/JSM)
International Pet Supplies and
Distribution, Inc.,

           Plaintiffs,

v.                                      **MEMORANDUM OPINION**
                                                       **AND ORDER**

Insurance Company of North America,

           Defendant.

---

David J. Taylor, Jeffrey M. Baill, and Steven Theesfeld, Yost & Baill, LLP, 220 South Sixth Street, Suite 2050, Minneapolis, MN 55402, for Plaintiffs.

John F. Angell, Cindy L. Butler, Louise A. Behrendt, and Stacey L. Sever, Stich, Angell, Kriedler, Dodge & Unke, P.A., 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, for Defendant.

---

SUSAN RICHARD NELSON, United States District Judge

       This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Janie S. Mayeron dated June 4, 2012 [Doc. No. 83]. In the R&R, Magistrate Judge Mayeron recommended that this Court deny Plaintiffs' Motion for Summary Judgment [Doc. No. 58], and grant Defendant's Motion for Summary Judgment [Doc. No. 63]. Plaintiffs filed timely objections to the R&R [Doc. No. 84].

       According to statute, the Court must conduct a de novo review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo

review, the Court adopts the R&R.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The full factual background of this insurance coverage case is set forth in Magistrate Judge Mayeron's thorough R&R and will not be repeated here.  In brief, Plaintiff Petco Animal Supplies Stores, Inc. ("Petco") sold an aquarium tank heater to Medtronic.  The heater was faulty and caught fire, causing nearly $2 million in damage to Medtronic's property and business.  Medtronic sued Petco, and the parties ultimately entered into a Miller-Shugart settlement, agreeing that Petco would be liable but that Medtronic could recover only against the insurer for the manufacturer of the heater, Defendant Insurance Company of North America ("ICNA").  Petco instituted this declaratory judgment action, seeking a declaratory judgment that the damage is covered by ICNA's policy with the manufacturer.

The policy contains the following condition precedent: "It is warranted and a condition precedent to recovery hereunder, that Air Pumps, Heater [sic], Filters, Heating Stone, Heated Mat, Heated Bowl and Heated Bucket are UL/CSA[1] approved and/or complied with the mandatory and/or voluntary safety standards of importing countries." (Compl. Ex. A [Doc. No. 1-1] at 17.)  UL standards are "national minimum standards, and compliance with the standards by industry is voluntary."  Meisner v. Patton Elec. Co.,

---

[1]"UL" is Underwriters Laboratories, "an independent industry-wide non-profit that establishes standards in the electrical field."  Burndy Corp. v. Teledyne Indus., Inc., 748 F.2d 767, 768 (2d Cir. 1984).  "CSA" is the Canadian Standards Association, which provides standards for goods sold in Canada.  (R&R at 12 n.5.)

781 F. Supp. 1432, 1443 (D. Neb. 1990). There is no dispute that the faulty aquarium heater was not UL approved.

On the parties' cross-Motions for Summary Judgment, the R&R found that the policy unambiguously required that the heater meet whatever mandatory or voluntary safety standards exist in the importing country, in this case, the United States. Because the heater did not meet UL standards or Petco's own standards, the R&R determined that the policy does not provide coverage for the damage caused by the heater.

In the Objections, Plaintiffs contend that the R&R erred in three ways: 1) by finding that the heater did not meet mandatory safety standards; 2) by finding the phrase "voluntary safety standards" unambiguous; and 3) by adding the term "minimum" to the phrase "voluntary safety standards" and defining "minimum" to mean "UL standards." (Obj. [Doc. No. 84] at 1.) Plaintiffs do not object to the R&R's conclusion that the policy provision at issue was a condition precedent to coverage, and that it was Plaintiffs' burden to establish coverage. (R&R at 16.)

## II.    DISCUSSION

### A.    Ambiguity

Plaintiffs argue that the Magistrate Judge incorrectly determined that the policy language regarding voluntary safety standards is unambiguous, and requires a product to meet either the mandatory safety standard or any voluntary safety standards in the importing country. Because there is no dispute that the United States imposes no mandatory standards on aquarium heaters, the only reasonable interpretation of the policy

language is that any heater imported into the United States must either meet UL standards or another voluntary standard to be covered under the policy. Thus, the R&R correctly found that the policy was unambiguous. The only possible voluntary standards applicable to products imported into the United States are UL standards, and Plaintiffs require that the products they sell meet UL standards. Because the heater here did not meet UL standards, it was excluded from coverage under the policy.

Plaintiffs continue to press the argument that, because the heater was allowed into the country by U.S. Customs, it must have met any applicable safety standard. The Court disagrees. Customs does not examine each product imported into this country to ensure that the product meets the applicable safety standards. The Customs' requirement that products meet safety standards is a post-hoc way to penalize importers for importing unsafe goods, not a pre-importation safety requirement for any product entering this country. The R&R properly rejected this argument.

**B.    "Minimum" Safety Standards**

Neither did the R&R err in reading the term "minimum" into the policy's safety-standard requirements. UL standards, or other industry standards, are by definition "minimum" standards. A product may exceed the industry standard, but what the standard tests is whether the product meets the standard. In other words, the standard provides the floor, not the ceiling, of what is required. It is therefore not incorrect to say that the standard is a "minimum" standard, and indeed UL standards are often described in precisely this way. See, e.g., Meisner, 781 F. Supp. at 1443 (describing UL standards

as "national minimum standards").

## III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The R&R [Doc. No. 83] is **ADOPTED**;

2. ICNA's Motion for Summary Judgment [Doc. No. 63] is **GRANTED**; and

3. Plaintiffs' Motion for Summary Judgment [Doc. No. 58] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 6, 2012                                      s/Susan Richard Nelson
                                                          SUSAN RICHARD NELSON
                                                          United States District Judge